J-A11003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
STEVEN HOWARD BARTHALOW   :
  :
Appellant   :   No. 1196 MDA 2025
  :

Appeal from the Judgment of Sentence Entered May 22, 2025
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000079-2024

BEFORE: BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:             **FILED: JULY 17, 2026**

Steven Howard Barthalow ("Barthalow") appeals from the judgment of sentence entered by the Fulton County Court of Common Pleas ("trial court") after a jury found him guilty of two counts of terroristic threats and not guilty of two counts of simple assault.[1] On appeal, Barthalow challenges the sufficiency of the evidence to sustain one of his convictions and the trial court's application of the deadly weapon used enhancement when it imposed his sentence. Upon review, we affirm.

The certified record reflects the following facts. At approximately 10:30 p.m. on May 2, 2024, Barthalow arrived at a mobile home in McConnellsburg,

---

[1] 18 Pa.C.S. §§ 2706(a)(1), 2701(a)(3). The trial court granted the Commonwealth's application for leave to enter nolle prosequi as to a summary offense of public drunkenness, *id.* § 5505.

Pennsylvania unannounced, knocked on the door, and let himself in. N.T., 2/14/2025, at 54, 69, 80, 106-07. Myrannda Watkins, Timothy Thomas, and Christopher Gress lived at the residence, along with Watkins' minor daughter, and all were home that night. *Id.* at 43, 67, 104-05. They knew Barthalow, who had been there earlier that day helping with chores. *Id.* at 44, 46, 69, 79-80, 89, 106, 114. When Barthalow returned that night, he appeared intoxicated, was slurring his words, and asked for cigarettes. *Id.* at 44, 90, 107-08, 114.

Gress encountered Barthalow first as he was pushing his way inside the front door. *Id.* at 69. Gress saw a black knife with the blade exposed in Barthalow's right hand, told him to put it away because Watkins' daughter was present, and went to wash his work shirt in the bathroom. *Id.* at 70, 73, 77, 80-81, 109. Watkins and Thomas were in the kitchen; she told Barthalow she did not want him around her daughter if he was "on anything." *Id.* at 44, 90. Upset that no one had cigarettes, Barthalow held the knife in his hand at his side, with the blade extended and exposed, and repeatedly said no one wanted to help him, he was tired of helping everybody, "I'm going to stab you. I'm going to stab these people," and told Watkins that he would stab and cut her. *Id.* at 44, 46-48, 55, 62, 64, 90-91, 108, 116.

Feeling scared and nervous about what could happen, Watkins left to get Gress from the bathroom, telling him to get Barthalow out of the home because he was "not acting right" and she did not "really feel safe the way he

- 2 -

[wa]s acting." *Id.* at 44, 49, 56, 71, 81-82, 90, 110. Thomas did not see Barthalow's knife as he was cooking. *Id.* at 108.

Gress asked Barthalow to go outside on the front porch with him to hang up his work shirt. *Id.* at 44, 71, 110. Once on the porch, Barthalow continued to complain that he always helps everyone but no one wants to help him, and threatened to "cut[] heads off, mak[e] heads roll" and "cut [Gress] from [his] sternum to [his] throat and show [him] what's inside [his] own body." *Id.* at 72-74, 82-83. Within an arm's reach of each other, Barthalow was waving the knife at Gress with its blade out, pointing and "jerking" it forward at Gress. *Id.* at 73-74, 83, 111. Feeling terrified for his life, Gress asked Barthalow if he wanted to leave to get beer as a ruse and said he needed to go inside to get his wallet. *Id.* at 75, 82-83. Gress returned inside the residence, locked the door, told Watkins to call 911, and said "[t]hat mother fucker tried to stab me." *Id.* at 50, 75, 83-84, 111, 117. When Barthalow realized he had been locked out, he said "I should have done it. I should have just done it," and that he "should have got[ten Gress] on the porch." *Id.* at 76. Barthalow eventually left the residence. *Id.* at 50, 88.

Pennsylvania State Troopers Gary Hibner and David Dangel responded to the 911 call in separate vehicles. *Id.* at 29-30, 87. While en route, Trooper Hibner encountered a person walking along the street who matched Barthalow's description. *Id.* at 29-30, 37, 88. Trooper Hibner engaged Barthalow in conversation and noticed he appeared to be intoxicated with a

strong odor of alcohol emanating from him. *Id.* at 30, 38. He observed Barthalow swaying, using incoherent speech, slurring his words, and to be agitated and verbally aggressive. *Id.* A *Terry*[2] frisk recovered a black, folding pocketknife in the front, right pocket of Barthalow's pants. *Id.* at 32, 34, 88, Ex. C-1 (knife). Trooper Dangel arrived and likewise observed that Barthalow appeared to be intoxicated and was incoherent. *Id.* at 88-89. He proceeded to the residence to investigate and took statements from Watkins and Gress. *Id.* at 89, 92, Exs. C-2 & C-3 (statements of Watkins and Gress). Trooper Dangel then returned to Barthalow's location and placed him under arrest. *Id.* at 94. While in custody at the police barracks and as Trooper Dangel was preparing his reports, Barthalow made "mummering" statements within earshot that he did not hurt anyone but he "should have just did it[.]" *Id.* at 94, 96.

The matter proceeded to a one-day trial on February 14, 2025, at which the Commonwealth presented the testimony of Watkins, Gress, and Troopers Hibner and Dangel. Barthalow presented Thomas' testimony. The jury returned the verdict stated above. On May 22, 2025, the trial court sentenced him to an aggregate term of 24 to 120 months of imprisonment, applying a sentencing enhancement for each of his convictions based upon his use of a deadly weapon during the commission of the crimes against Watkins and

_____

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

Gress.  Barthalow filed a timely post-sentence motion, which the trial court

denied on August 5, 2025.  This timely appeal followed.

Barthalow presents the following issues for our review:

1) Whether the Commonwealth's evidence was sufficient to establish guilt beyond a reasonable doubt that [] Barthalow committed terroristic threats against [] Watkins?

2) Whether the [trial] court erred when it applied the deadly weapon used enhancement which resulted in an unreasonable and excessive sentence?

Barthalow's Brief at 4 (suggested answers and unnecessary capitalization

omitted).

We begin with Barthalow's first issue, which challenges the sufficiency

of the evidence to support his conviction of terroristic threats as to Watkins.[3]

We review a challenge to the sufficiency of the evidence according to the

following standard:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the factfinder to determine the weight to be accorded to each witness' testimony and to believe all, part, or none of the

_____

[3] In his concise statement of errors pursuant to Rule 1925(b), Barthalow challenged the sufficiency of the evidence to sustain his convictions as to both Watkins and Gress, but as he noted in his brief, his argument before this Court is limited to Watkins.  *See* Barthalow's Brief at 11 n.2; Pa.R.A.P. 1925(b) Statement, 9/15/2025, ¶¶ 11-12.

evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Kling*, 351 A.3d 1274, 1280-81 (Pa. Super. 2026) (brackets, quotation marks, and citation omitted).

The crime of terroristic threats requires the Commonwealth to prove that the defendant communicated, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another. 18 Pa.C.S. § 2706(a)(1). The term "communicates" means, inter alia, "conveys in person." *Id.* § 2706(e).

The purpose of the terroristic threats statute "is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." *Commonwealth v. Kline*, 201 A.3d 1288, 1290 (Pa. Super. 2019) (quotation marks and citation omitted). As such, "neither the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." *Kline*, 201 A.3d at 1290 (brackets, quotation marks, and citation omitted). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Id.* (quotation marks and citation omitted).

Barthalow contends that because Watkins testified that he did not directly threaten to stab or cut her, and did not point, jab, or lunge his knife

at her, the evidence was insufficient to show he communicated a threat to commit a crime of violence against her. Barthalow's Brief at 13-14. He further argues Watkins' testimony that she "was not terrified" or "in fear of her life" shows he did not intend to terrorize her. *Id.* at 14-15.

The trial court analyzed Barthalow's sufficiency claim as follows:

Both Watkins and Gress testified that Barthalow uttered statements to them about stabbing or cutting someone. This clearly establishes the communication of a threat to commit a crime of violence. Barthalow's intent was proved from a totality of the circumstances,[fn] including but not limited to, his general erratic behavior, the brandishing of a knife concurrently with communicating the threats, and the content of the threats themselves. It is th[e trial] court's considered opinion that the Commonwealth presented sufficient evidence for the jury to find each element beyond a reasonable doubt.

> [fn] … Viewing the evidence in the light most favorable to the Commonwealth, we find Barthalow communicated a threat to commit, at a minimum, aggravated assault, and at the most, murder of the first-degree. Either way, we conclude both crimes are within the "fair import" of the term "crime of violence."

Trial Court Opinion, 10/3/2025, at 17-18 (party designation altered; citation, some footnotes, and unnecessary capitalization omitted).

The evidence at trial demonstrates that Watkins testified on direct examination that Barthalow threatened to stab "them" and "people." N.T., 2/14/2025, at 44, 46. She further testified that Barthalow said, "I'm going to stab you. I'm going to stab these people[.]" *Id.* at 48; *see also id.* (Watkins responding affirmatively when the prosecutor asked her, "[Y]our testimony is [Barthalow] specifically while he's holding that knife at his waist level with the

blade out … he's telling you he's going to stab you?"), 62 (Watkins testifying that Barthalow "started mumbling about how people didn't help him and he helps people, then started saying he was going to cut and stab us because we wouldn't help him"). On cross-examination, Watkins agreed that Barthalow did not use her name when making his threats, but she testified that she understood his reference to "people" to include the people inside the residence: Watkins, her daughter, Gress, and Thomas. *Id.* at 58, 64. Trooper Dangel and Thomas corroborated her testimony. *Id.* at 90-91, 108, 116. Additionally, Trooper Dangel testified that Watkins reported to him during his investigation that Barthalow directly threatened her. *Id.* at 90-91. This was sufficient evidence to prove that Barthalow communicated, i.e., conveyed in person, a threat to commit a crime of violence. *See* 18 Pa.C.S. § 2706(a)(1), (e).

Turning to the element of intent, the evidence shows that Barthalow invaded Watkins' sense of personal security in her own home when he pushed his way inside without an invitation, and while in close proximity to her, held a knife with the blade extended and exposed as he simultaneously threatened to cut or stab her and the others inside the home. N.T., 2/15/2025, at 44, 46-48, 55, 62, 64, Exs. C-1-C-3. Although Watkins testified that she did not feel terrified or in fear of her life, the statute does not require that she believed Barthalow would have carried out his threats. *See Kline*, 201 A.3d at 1290. The evidence shows that Watkins experienced psychological distress when

Barthalow invaded her sense of personal security in her own home, as she testified that his threats and actions made her feel unsafe, scared, worried, anxious, nervous, and concerned for her and her daughter. N.T., 2/14/2025, at 44, 49, 55-57, 65; *see also Kline*, 201 A.3d at 1290. This evidence of record established facts from which the jury could reasonably infer that Barthalow intended to terrorize Watkins. *See Kline*, 201 A.3d at 1290.

Accordingly, based upon our review of the record in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that the Commonwealth established sufficient evidence from which the jury could conclude that Barthalow committed the crime of terroristic threats against Watkins. No relief is due.

In his second issue, Barthalow argues that the trial court erred in applying the deadly weapon used sentencing enhancement, resulting in an excessive sentence. Barthalow's Brief at 15-25. He contends that the knife at issue was not a deadly weapon. *Id.* at 10, 18-19. With respect to Watkins, Barthalow argues he did not use the knife with the intent to threaten or injure her. *Id.* at 24. For Gress, he argues that no one corroborated Gress' testimony as to what happened outside the residence and further, because the jury did not convict Barthalow of simple assault, it must have concluded that Barthalow did not take any action toward carrying out his threat. *Id.* at 24-25.

Barthalow's claim implicates the discretionary aspects of his sentence. *See Commonwealth v. Bishop*, 831 A.2d 656, 660 (Pa. Super. 2003) (stating that a claim that the trial court imposed a manifestly excessive sentence is a challenge to the discretionary aspects of the sentence). "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Knox*, 165 A.3d 925, 929 (Pa. Super. 2017) (citation omitted). To be entitled to this Court's review of his claim, Barthalow must satisfy the following four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); (4) the appellant raises a substantial question for our review.

*Commonwealth v. Rivera*, 312 A.3d 366, 376-77 (Pa. Super. 2024) (quotation marks, brackets, and citation omitted). A substantial question is determined on a case-by-case basis and exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McCain*, 176 A.3d 236, 240 (Pa. Super. 2017) (quotation marks and citation omitted).

In this case, Barthalow filed a timely appeal and raised his claim in a post-sentence motion. He also included a Rule 2119(f) statement in his brief,

wherein he contends that the trial court's improper application of the deadly weapon used enhancement resulted in an excessive sentence. Barthalow's Brief at 8-11. This claim raises a substantial question. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1266 (Pa. Super. 2014) (en banc) (holding a claim of trial court error in applying a deadly weapon sentencing enhancement presents a substantial question). Accordingly, we proceed to review the merits of the claim.

Our standard of review is well established:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Campbell*, 347 A.3d 707, 718 (Pa. Super. 2025) (citation omitted).

We begin by reviewing the sentencing provisions applicable to the deadly weapon enhancement. Section 2154(b)(3) the Judicial Code requires the Pennsylvania Commission on Sentencing to adopt sentencing guidelines that address "[c]riminal behavior, by specifying a range of sentences of increased severity or intensity of intervention for offenders with increased culpability, including those who possessed or used a deadly weapon or inflicted substantial harm during the commission of the current conviction offense." 42

Pa.C.S. § 2154(b)(3); **see also** 204 Pa. Code § 303a.1(a)(1)(ii)(C).  A deadly

weapon is defined as:

> A firearm, as defined in 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms), whether loaded or unloaded; or any dangerous weapon, as defined in 18 Pa.C.S. § 913 (relating to possession of firearm or other dangerous weapon in court facility); or any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury, including where the court determines that the person intended to use the weapon to threaten or injure another person.

204 Pa. Code § 303a.1(d).

> When the court determines that the person used a deadly weapon during the commission of the current conviction offense, the court shall adjust the [offense gravity score ("OGS")] as provided in § 303a.12.  The person has used a deadly weapon if a deadly weapon was employed by the person in a way that threatened or injured another person.

**Id.** § 303a.3(b)(5)(i)(B); **see also id.** § 303a.1(d) (defining "Enhancement"

as "[a]n increase in the OGS assignment that applies when a court determines

one or more specified sentencing factors were present during the commission

of a crime").  "The application of an enhancement is determined by the court

at sentencing, based on a preponderance of the evidence."  **Id.**

§ 303a.3(b)(1).

The crime of terroristic threats at issue here is graded as a first-degree

misdemeanor with an OGS of seven.  18 Pa.C.S. § 2706(d) (Grading); 204

Pa. Code § 303a.11 (Omnibus OGS tables).  Imposing the deadly weapon used

enhancement to a conviction of terroristic threats increases the OGS by three,

resulting in an OGS of ten. *See* 204 Pa. Code § 303a.12 (OGS enhancements table).

In this case, Barthalow had a prior record score ("PRS") of three. Without the enhancement, Barthalow's standard range sentence was three to six months of incarceration; applying the deadly weapon used enhancement increased the standard range sentence to twelve to eighteen months. *Id.* § 303a.14 (Sentencing matrix). The trial court sentenced Barthalow to 12 to 60 months of incarceration on each count of terroristic threats, to run consecutively, resulting in an aggregate sentence of 24 to 120 months.[4]

We first address Barthalow's claim that the knife he used does not constitute a deadly weapon because the knife was not activated by a switch. Barthalow's Brief at 18-19. In so arguing, he points us to the definitions contained in 18 Pa.C.S. §§ 913(f) and 2301 and our prior decision in *Commonwealth v. Blake*, 605 A.2d 427, 428 (Pa. Super. 1992).

Barthalow's reliance on *Blake* is misplaced for multiple reasons, most importantly because it was decided under a prior version of the deadly weapon enhancement sentencing guidelines that specifically used the definition of deadly weapon provided in section 2031 of the Crimes Code.[5] *See Blake*,

---

[4] The statutory maximum sentence for terroristic threats graded as a first-degree misdemeanor is five years of imprisonment. *See* 18 Pa.C.S. §§ 106(b)(6), 1104(1).

[5] Section 2301 defines "deadly weapon" as:
*(Footnote Continued Next Page)*

- 13 -

605 A.2d at 428. For the same reason, the definition contained in section 2301 is inapplicable, as the new version of the deadly weapon enhancement contains its own definition of "deadly weapon," as quoted hereinabove. *See* 204 Pa. Code § 303a.1(d).

---

> Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S. § 2301. The statute plainly states, however, this definition applies when the phrase is used in Article B (Offenses Involving Danger to the Person), 18 Pa.C.S. §§ 2301-3220, not when a trial court is determining whether a person used a deadly weapon such that the OGS must be adjusted. *See* 18 Pa.C.S. § 2301; 204 Pa. Code § 303a.3(b)(5)(i)(B).

*Blake* is also factually inapposite. There, this Court examined the language of section 2301 to determine whether a pocketknife qualified as a deadly weapon for purposes of the deadly weapon enhancement. *Blake*, 605 A.2d at 428. While committing burglary, the appellant encountered the homeowners and a struggle ensued. *Id.* at 427. The victim was stabbed in the thigh by an open pocketknife, which was in the appellant's pocket. *Id.* at 427-28. This Court first held that there was insufficient evidence of the knife's size, shape, or blade to determine whether it was a "device designed as a weapon" under the section 2031 definition. *Id.* at 428 & n.1. In this regard, however, we expressly stated that "[w]e do not hold that a pocketknife can never be considered to be designed as a weapon under all circumstances." *Id.* at 428 n.1. Further, this Court concluded that, because there was no evidence the appellant took the knife out of his pocket and used it as a weapon, it could not meet second, alternate prong of the definition: "'any device or instrumentality which, in the manner which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.'" *Id.* at 428 (quoting 18 Pa.C.S. § 2301).

Nor are we persuaded by Barthalow's argument that section 913(f)[6] of the Crimes Code applies here. Although a "dangerous weapon" as defined by section 913(f) constitutes a "deadly weapon" under section 303a.1(d), so too does "any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury, including where the court determines that the person intended to use the weapon to threaten or injure another person." *Id.* It is this latter definition that is applicable to Barthalow's knife. We therefore agree with the trial court that Barthalow's knife was a deadly weapon because it meets the definition: it is an instrumentality capable of producing death or serious bodily injury.[7] *See* 204 Pa. Code § 303a.1(d);

_____

[6] Section 913(f) defines "dangerous weapon" as the following:

> A bomb, any explosive or incendiary device or material when possessed with intent to use or to provide such material to commit any offense, graded as a misdemeanor of the third degree or higher, grenade, blackjack, sandbag, metal knuckles, dagger, knife (the blade of which is exposed in an automatic way by switch, push-button, spring mechanism or otherwise) or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

18 Pa.C.S. § 913(f).

[7] We recognize that the trial court relied upon 204 Pa. Code § 303.10(a)(2)(iii), as well as section 2301 of the Crimes Code, to reach its decision that the knife in question constituted a deadly weapon. *See* Trial Court Opinion, 10/3/2025, at 18-20. The provisions of Chapter 303 (Sentencing Guidelines, 7th Edition) applied to offenses committed before January 1, 2024. 204 Pa. Code § 303.19 (Applicability). As Barthalow committed his crimes on May 2, 2024, the provisions of Chapter 303a (Sentencing Guidelines, 8th Edition) apply. *Compare id.* § 303.10(a)(2)(iii) *with id.* § 303a.1(d). Nonetheless, it is well settled that "where the result is
*(Footnote Continued Next Page)*

*see also Commonwealth v. Williamson*, 330 A.3d 407, 420 (Pa. Super. 2025) (recognizing that "guns, knives, and other clearly offensive weapons constitute the most obvious and commonly encountered forms of deadly weapons") (citation and quotation marks omitted).

Having determined that Barthalow's knife qualifies as a deadly weapon, our inquiry turns to whether the trial court abused its discretion by determining the preponderance of the evidence showed that he "used" it when committing his acts of terroristic threats such that the deadly weapon used enhancement applies. *See id.* § 303a.3(b)(1). As recounted above, a "person has used a deadly weapon if a deadly weapon was employed by the person in a way that threatened or injured another person." 204 Pa. Code § 303a.3(b)(5)(i)(B).

The trial court considered the totality of the evidence to conclude that Barthalow used a deadly weapon as to both Watkins and Gress:

> Barthalow brandished a knife to both victims concurrently with uttering threats to stab "someone" or "cut their head off." The threat is even more specific as it relates to Gress. Barthalow, while holding the knife with the blade pointed toward Gress, asked Gress if he would like him to cut him from "sternum to throat" and "show him what's inside [his] own body."
>
> *      *      *

_____

correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." *Commonwealth v. Lehman*, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (citations and quotation marks omitted).

Barthalow used the knife to threaten both Watkins and Gress. Specifically, he held the knife to his side while threatening Watkins that he was "just going to stab" people who do[ not] help him. He later pointed the knife at Gress, and was otherwise waving it around, when he asked Gress if he wanted Barthalow to cut him from sternum to throat and show him what his insides looked like. Clearly, he utilized the knife to threaten both victims.

Therefore, the knife in question was used to threaten the victims in this case, and the manner in which it was intended to be used was reasonably calculated to produce death or serious bodily injury.

Trial Court Opinion, 10/3/2025, at 19-20 (party designation altered).

We agree with the trial court that a preponderance of the evidence demonstrated that Barthalow employed the knife in a way that threatened both Gress and Watkins. With respect to Gress, Barthalow waved, pointed, and "jerked" the knife at him when they were within an arm's reach of each other, all while Barthalow made threats, including a specific and disturbing threat to cut Gress from his sternum to his throat and show Gress his insides. N.T., 2/14/2025, at 50, 72-75, 82-83, 111, 117. As to Watkins, Barthalow employed the knife as an implement of submission and fear when he displayed it in plain view, with the blade exposed and in close proximity to her, as he verbally threatened to cut or stab her with the knife. *Id.* at 44, 46-48, 55-57, 62, 64, 90-91; *see also Commonwealth v. Magnum*, 654 A.2d 1146, 1147, 1150 (Pa. Super. 1995) (holding deadly weapon used enhancement applied where the offender threatened the victims with a knife); *cf. Commonwealth v. Shull*, 148 A.3d 820, 832 (Pa. Super. 2016) (rejecting the offender's argument that the deadly weapon used enhancement should

not apply where he visibly held a replica gun in his hand in plain view of the victim during the crime but never pointed it at the victim).  Further, the knife was not merely on Barthalow's person; he entered the residence with the knife in his hand and continued to display it even after Gress told him to put it away. N.T., 2/14/2025, at 69-70.  We thus conclude that the trial court did not err in applying the deadly weapons used enhancement to his convictions.  *See Campbell*, 347 A.3d at 718.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/17/2026